UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTUAN WALDEN,

Plaintiff,

Case No. 1:15-cv-766

v.

Honorable Robert J. Jonker

D. PALMER,

Defendant.

______________________________/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and state law. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Palmer, with the exception of Plaintiff's retaliation claim.

## Factual Allegations

Plaintiff is incarcerated in the Carson City Correctional Facility. In his *pro se* complaint, Plaintiff sues D. Palmer, the Assistant Food Service Director at Carson City. At the time of the events giving rise to the complaint, Defendant Palmer was employed by Aramark, a private company that contracted with the State of Michigan to provide food service for the state's prisons. On September 25, 2014, Aramark employee Kellie Border wrote a Class I misconduct report against Plaintiff for alleged sexual misconduct committed during the course of his prison employment in the food service department. (*See* Misconduct Report, Exhibit A, docket #1-1, Page ID#10.) The same day, Plaintiff was laid-in from his job in food service and placed on non-bond top lock in his cell pending the outcome of the misconduct report. On October 7, 2014, Plaintiff received a work assignment evaluation recommending that Plaintiff be terminated for displaying inappropriate behavior towards Aramark staff while conducting his duties in food service. (*See* Prisoner Program and Work Assignment Evaluation, Exhibit B, docket #1-1, Page ID#12.) The termination was approved by Defendant Palmer. (*Id.*)

Following an administrative hearing on October 9, 2014, the hearing officer dismissed the misconduct charge against Plaintiff because the time limit in which to hear the charge had expired. (*See* Class I Misconduct Hearing Report, Exhibit C, docket #1-1, Page ID#14.) Under Michigan Department of Corrections (MDOC) policy, a prisoner who is not found guilty of a misconduct charge may return to the same assignment, unless the Classification Director determines that the prisoner should be reclassified.[1] Plaintiff alleges that he received a callout to return to his

---

[1]MDOC Policy Directive 05.01.100(DD) (Prisoner Program Classification) provides:

> If the prisoner is not found guilty at the initial hearing, s/he shall be paid for any time s/he was removed from the assignment pending the hearing. The prisoner may be returned to the same assignment or considered for reclassification in accordance with this policy, as determined by the

assignment in food service, but when he arrived for work, Defendant Palmer asked Plaintiff why he was there because he had been terminated. Plaintiff explained that because the misconduct charge was dismissed, he could return to work. Palmer allegedly responded, "'I'm the Boss and I make my own rules, I told you, I was going to get you.'" (Compl. ¶ 10, docket #1, Page ID#4.) According to Plaintiff, Palmer previously warned Plaintiff that if he "keeps standing up for himself and other[s] regarding Defendant's practices, Defendant was going to write a ticket and terminate him." (*Id*. at ¶ 11.) Defendant Palmer also allegedly claimed that the termination was unrelated to the misconduct report. Plaintiff indicated that he was going to file a grievance regarding the matter, to which Palmer allegedly responded, "'if you file a grievance on me, I'm going to make sure you never work in food service again . . . .'" (*Id.* at ¶ 15.)

On October 13, 2014, Plaintiff filed a grievance against Palmer for wrongful termination. Defendant Palmer interviewed Plaintiff regarding the grievance on December 12, 2014. Plaintiff told Palmer that he was violating MDOC policy, which provides that "[p]risoners and staff who may be involved in the issue being grieved shall not participate in any capacity in the grievance investigation, review, or response, except as necessary to provide information to the respondent." MDOC Policy Directive 03.02.130(U). Palmer allegedly responded, "'I told you that I make my own rules and since you wrote a grievance on me, I waited until my Boss left so I can personally deny your grievance." (Compl. ¶ 18, Page ID#5.) In the Step I grievance response, Defendant Palmer stated:

> [Plaintiff] displayed unfavorable and inappropriate behavior towards staff while conducting his duties within the Food Service area. This behavior was not conducive

---

Classification Director. The prisoner shall not be returned to the same assignment if the Classification Director determines it to be a threat to the safety or security of the facility.

> to the work ethics of this area within the facility.  For the safety and security of the staff in this area, I recommended termination of [Plaintiff].

(Step I Grievance Response, Exhibit E, docket #1-1, Page ID#20.)  The grievance response referenced a memorandum from Hearing Investigator Kavanaugh dated September 29, 2014. Plaintiff claims that when he asked Kavanaugh about the alleged memorandum, she stated that she never sent a memorandum to food service.  Plaintiff unsuccessfully appealed the grievance to Steps II and III.

Plaintiff raises four legal claims.  First, he claims that Defendant Palmer retaliated against him for engaging in protected conduct by terminating him from his job assignment, falsifying Plaintiff's work assignment evaluation and preventing Plaintiff from returning to his job in food service after the misconduct charge was dismissed.  Second, Plaintiff contends that Palmer violated his Fourteenth Amendment due process rights by falsifying the work assignment evaluation and the Step I grievance response, thereby depriving Plaintiff of his job.  For his third claim, Plaintiff asserts that Palmer conspired to terminate him from his employment in food service.  Finally, Plaintiff claims that Palmer's conduct violated state tort law.  Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

## Discussion

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

I. Due Process

The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d

371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same).  Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730 at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)).  Plaintiff, therefore, cannot state a due process claim against Defendant Palmer arising from the termination of his prison employment.

Likewise, Plaintiff has no due process right to file a prison grievance.  The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendant Palmer's denial of the Step I grievance, even if on improper or false grounds, did not deprive him of due process.

Moreover, Plaintiff's claim that Defendant Palmer violated the grievance policy by interviewing Plaintiff on the Step I Grievance fails to state a federal claim under § 1983.  Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the

level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Plaintiff, therefore, fails to state a due process claim.

II. Conspiracy

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

In this case, Plaintiff claims that Defendant Palmer conspired to terminate his employment in food service and prevent him from returning to work after the misconduct charge was

dismissed. By definition, one person cannot engage in a conspiracy. Accordingly, Plaintiff fails to state a claim upon which relief can be granted.

III. Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that Defendant Palmer retaliated against him for engaging in protected conduct by terminating him from his job assignment, falsifying Plaintiff's work assignment evaluation and preventing Plaintiff from returning to his job in food service after the misconduct charge was dismissed. Accepting Plaintiff's allegations as true for purposes of initial screening, *Denton*, 504 U.S. at 33, they are sufficient to warrant service of Plaintiff's retaliation claim against Palmer.

IV. State Tort Claims

Plaintiff contends that Defendant Palmer's actions "violated State Tort Law and caused Plaintiff pain, suffering, and the intentional infliction of mental and emotional distress." (Compl., Page ID#6.) Plaintiff does not make any further allegations in the complaint concerning

the alleged state law claims. Because his state-law claims are vague and wholly conclusory, they will be dismissed for failure to state a claim. *See Iqbal*, 556 U.S. at 678-69*; Twombly*, 550 U.S. 544, 555 (2007).

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendant Palmer will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e, with the exception of Plaintiff's retaliation claim.

An Order consistent with this Opinion will be entered.

Dated: September 1, 2015

/s/ Robert J. Jonker
ROBERT J. JONKER
CHIEF UNITED STATES DISTRICT JUDGE