UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTUAN WALDEN,

        Plaintiff,

v.

D. PALMER,

        Defendant.
_____/

Case No. 1:15-cv-766

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner in the custody of the Michigan Department of Corrections (MDOC) pursuant to 42 U.S.C. § 1983.[1] This matter is now before the Court on defendant's "Motion to dismiss and/or for summary judgment" (docket no. 17).

    **I.**    **Background**

The Court previously summarized the allegations set forth in plaintiff's complaint as follows:

> Plaintiff is incarcerated in the Carson City Correctional Facility. In his *pro se* complaint, Plaintiff sues D. Palmer, the Assistant Food Service Director at Carson City. At the time of the events giving rise to the complaint, Defendant Palmer was employed by Aramark, a private company that contracted with the State of Michigan to provide food service for the state's prisons. On September 25, 2014, Aramark employee Kellie Border wrote a Class I misconduct report against Plaintiff for alleged sexual misconduct committed during the course of his prison employment in the food service department. (*See* Misconduct Report, Exhibit A, docket #1-1, Page ID#10.) The same day, Plaintiff was laid-in from his job in food service and placed on non-bond top lock in his cell pending the outcome of the misconduct report. On October 7, 2014, Plaintiff received a work assignment evaluation recommending that Plaintiff be terminated for displaying inappropriate behavior towards Aramark staff

---

[1] While plaintiff is listed on the docket sheet and some documents as "Antuan Walden", he has signed documents as "Antjuan Walden".

while conducting his duties in food service. (*See* Prisoner Program and Work Assignment Evaluation, Exhibit B, docket #1-1, Page ID#12.) The termination was approved by Defendant Palmer. (*Id.*)

Following an administrative hearing on October 9, 2014, the hearing officer dismissed the misconduct charge against Plaintiff because the time limit in which to hear the charge had expired. (*See* Class I Misconduct Hearing Report, Exhibit C, docket #1-1, Page ID#14.) Under Michigan Department of Corrections (MDOC) policy, a prisoner who is not found guilty of a misconduct charge may return to the same assignment, unless the Classification Director determines that the prisoner should be reclassified. Plaintiff alleges that he received a callout to return to his assignment in food service, but when he arrived for work, Defendant Palmer asked Plaintiff why he was there because he had been terminated. Plaintiff explained that because the misconduct charge was dismissed, he could return to work. Palmer allegedly responded, "'I'm the Boss and I make my own rules, I told you, I was going to get you.'" (Compl. ¶ 10, docket #1, Page ID#4.) According to Plaintiff, Palmer previously warned Plaintiff that if he "keeps standing up for himself and other[s] regarding Defendant's practices, Defendant was going to write a ticket and terminate him." (*Id.* at ¶ 11.) Defendant Palmer also allegedly claimed that the termination was unrelated to the misconduct report. Plaintiff indicated that he was going to file a grievance regarding the matter, to which Palmer allegedly responded, "'if you file a grievance on me, I'm going to make sure you never work in food service again . . . .'" (*Id.* at ¶ 15.)

On October 13, 2014, Plaintiff filed a grievance against Palmer for wrongful termination. Defendant Palmer interviewed Plaintiff regarding the grievance on December 12, 2014. Plaintiff told Palmer that he was violating MDOC policy, which provides that "[p]risoners and staff who may be involved in the issue being grieved shall not participate in any capacity in the grievance investigation, review, or response, except as necessary to provide information to the respondent." MDOC Policy Directive 03.02.130(U). Palmer allegedly responded, "'I told you that I make my own rules and since you wrote a grievance on me, I waited until my Boss left so I can personally deny your grievance.'" (Compl. ¶ 18, Page ID#5.) In the Step I grievance response, Defendant Palmer stated:

> [Plaintiff] displayed unfavorable and inappropriate behavior towards staff while conducting his duties within the Food Service area. This behavior was not conducive to the work ethics of this area within the facility. For the safety and security of the staff in this area, I recommended termination of [Plaintiff].

(Step I Grievance Response, Exhibit E, docket #1-1, Page ID#20.) The grievance response referenced a memorandum from Hearing Investigator Kavanaugh dated

2

> September 29, 2014.  Plaintiff claims that when he asked Kavanaugh about the alleged memorandum, she stated that she never sent a memorandum to food service. Plaintiff unsuccessfully appealed the grievance to Steps II and III.
>
> Plaintiff raises four legal claims.  First, he claims that Defendant Palmer retaliated against him for engaging in protected conduct by terminating him from his job assignment, falsifying Plaintiff's work assignment evaluation and preventing Plaintiff from returning to his job in food service after the misconduct charge was dismissed. Second, Plaintiff contends that Palmer violated his Fourteenth Amendment due process rights by falsifying the work assignment evaluation and the Step I grievance response, thereby depriving Plaintiff of his job.  For his third claim, Plaintiff asserts that Palmer conspired to terminate him from his employment in food service.  Finally, Plaintiff claims that Palmer's conduct violated state tort law. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

Opinion (docket no. 5, PageID.52-54).  The Court dismissed all of plaintiff's claims against defendant "with the exception of Plaintiff's retaliation claim." *Id*. at PageID.59. *See also*, Order for partial dismissal and partial service (docket no. 6, PageID.61).

## II. Defendants' motion for summary judgment

### A. Legal standard

As with most combined motions "to dismiss and/or for summary judgment," defendant's combined "and/or" motion is imprecise with respect to those matters being considered for dismissal under Fed. R. Civ. P. 12(b)(6) and those matters being considered for summary judgment under Fed. R. Civ. P. 56.  Defendant's explanation is equally unhelpful, i.e., "In this case, Defendant contends that Plaintiff has failed to state claims upon which relief can be granted and/or there is no genuine dispute as to any material fact and Defendant is entitled to judgment as a matter of law."  Defendant's Brief (docket no. 17, PageID.99).  Given the submissions by both plaintiff and defendant, the Court construes this motion as one for summary judgment.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

3

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Failure to Exhaust

#### 1.    Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter*

*v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where,

> why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. The grievance history

Plaintiff's claim before this Court is "that Defendant Palmer retaliated against him for engaging in protected conduct by terminating him from his job assignment, falsifying Plaintiff's work assignment evaluation, and preventing Plaintiff from returning to his job in food service after the misconduct charge was dismissed." Opinion at PageID.58. The only grievance at issue in this case is Grievance DRF-14-10-2302-09z ("2302"). *See* Grievance No. 2302 (docket no. 17-4, PageID.118-130). The Step I grievance, dated October 20, 2014, listed an incident date of October 6, 2014, the date his work assignment termination was approved. *Id*. at PageID.121; Prisoner Program and Work Assignment Evaluation (Form 363) (docket no. 17-4, PageID.125).[2] Plaintiff stated that he "discussed this matter with Aramark Supervisor, Palmer, Deputy Fenby and Classification Director Becher without satisfaction." Grievance No. 2302 at PageID.121. Plaintiff

---

[2] In his complaint, plaintiff alleged that he filed the grievance on October 13, 2014. *See* Compl. at PageID.5. MDOC records reflect that the grievance was filed on October 20, 2014 and received by the MDOC on October 24, 2014. *See* Grievance No. 2302 at PageID.121. The Court notes that it would reach the same result whether plaintiff filed the grievance on October 13, 2014 or October 20, 2014. In either case, plaintiff filed the grievance after he was terminated from his prison work assignment. *See* discussion, *infra*.

did not state his grievance on the form, but referred to an "attached Statement of Grievance." *Id*.

This statement set forth the following complaint:

> I was terminated from my food service detail on October 6, 2014 for some unknown inappropriate behavior. Aramark Food Service Supervisor, Palmer, stated that I was being terminated for some undocumented inappropriate behavior.
>
> According to operating procedure for Prisoner Program Classification, on page 6 of 8 under #9, it states that: assignment supervisor notifies the classification direct that a prisoner is to be removed from assignment using CSJ 363, stating the reason for removal. Note: <u>progressive discipline must be exhausted prior to removal, and this must be documented</u>, e.g., verbal counseling, written reprimands, progressive sanction, etc.
>
> The CSJ 363 which was sent to classification regarding my termination stated that, "Prisoner Walden #450560 has displayed inappropriate behavior towards Aramark staff while conducting his duties within the food service area." On the contrary, my work reports (363) indicate average to above average work performance without any report of inappropriate behavior towards staff. I have never received any verbal counseling for inappropriate behavior, nor have I received any written reprimands for inappropriate behavior, or sanctioned for inappropriate behavior. My termination should not be based upon someone's personal likes or dislikes. Just because someone at food service apparently doesn't like me, this alone is no reason for my termination. Policy states that I should not be terminated unless there has been some prior documentation of inappropriate behavior. Because there is no such documentation regarding inappropriate behavior, I must be reinstated to my food service detail, and given back pay until I am reassigned. Furthermore, the (363) terminating my job must be removed from my file.

Statement of Grievance No. 2302 (docket no. 17-4, PageID.126).

> The relevant Form 363 stated in the comments and recommendations section:
>
> Please terminate Prisoner Walden #450560. Prisoner Walden #450560 has displayed inappropriate behavior towards Aramark staff while conducting his duties in the Food Service area. This behavior is not conducive to the work ethics of this area within the facility. For the safety and security of the staff in this area, I am recommending termination of Prisoner Walden #450560.

From 363 (Oct. 6, 2014) (docket no. 17-4, PageID.125).

7

The grievance was denied with defendant Palmer as the respondent and B. Davis as the reviewer. *See* Step I response (docket no. 17-4, PageID.122). Plaintiff's Step II appeal involved the original claim (i.e., that "no progressive discipline was used") and a new claim that defendant Palmer interviewed him. *See* Step II Response (docket no. 17-4, PageID.120). In denying plaintiff's Step II appeal, the respondent, Catherine Stoddard did not believe plaintiff's statement that he had "no idea as to what 'unknown inappropriate behavior' [he] displayed to be terminated," noting that another Form 363 from August 13, 2014 stated that plaintiff received a lay-in because he was caught giving larger portions than approved for the meals. *Id*. In denying the appeal, Ms. Stoddard also stated that "[p]olicy and procedure was followed in this case." *Id*. Plaintiff's Step III appeal was also denied. *See* Step III Response (docket no. 17-4, PageID.118).

### 4. Discussion

This lawsuit involves plaintiff's allegation that defendant Palmer retaliated against plaintiff in violation of the First Amendment. The necessary elements to establish a First Amendment retaliation claim in the prison context are:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). For purposes of a First Amendment retaliation claim, "[p]rotected conduct is defined as those actions taken pursuant to 'individual rights with which the government generally cannot interfere.'" *Manning v. Bolden*, 102 Fed. Appx. 904, 905 (6th Cir. 2004), quoting *Thaddeus-X*, 175 F.3d at 387.

Here, plaintiff did not administratively exhaust a retaliation claim against defendant. The only grievance filed in this matter was no. 2302, which stated an incident date of October 6, 2014, i.e., the date that plaintiff was terminated from his prison work assignment. *See* Grievance No. 2302 at PageID.121. As discussed, the grievance does not claim that defendant Palmer terminated plaintiff's work assignment in retaliation for plaintiff's engagement in protected conduct. Rather, the grievance claims that plaintiff was wrongfully removed from his prison work assignment because the supervisor, Palmer, did not submit "prior documentation regarding inappropriate behavior" under the operating procedure for Prisoner Program Classification. *See id*. at PageID.126. While plaintiff's filing of grievance no. 2302 was protected conduct, plaintiff cannot claim that defendant Palmer retaliated against him for filing this grievance. There was no causal connection between the protected conduct (filing the grievance) and the adverse action (termination from prison work assignment), because the adverse action occurred on October 6, 2014, two weeks *before* plaintiff filed the grievance.

In his response, plaintiff claims that he properly grieved retaliation and that defendant Palmer prevented exhaustion. Plaintiff's Response (docket no. 20, PageID.188-190). In a declaration opposing the motion, plaintiff frames the alleged retaliation as based on his protected conduct of threatening to file a grievance against defendant Palmer. According to plaintiff, on October 9, 2014, when he returned to his work assignment, plaintiff told defendant Palmer, among other things, "that a grievance was going to be filed," to which Palmer responded "[i]f you file a grievance on me, I'm going to make sure you never work in food service again." Walden Decl. (docket no. 20-1, PageID.210); *see also* Compl. at PageID.4 ("On September 25, 2014, Plaintiff was

9

laid-in from his food service detail and placed on non-bond top lock in his cell, pending outcome of his misconduct report"). Plaintiff filed grievance no. 2302 several days after this encounter.

As an individual in the custody of the state, plaintiff is entitled to petition the state for redress of grievances under the First Amendment. *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). Assuming, for purposes of this motion, that plaintiff threatened to file a grievance against defendant Palmer on October 9, 2014, this action was not "protected conduct" for purposes of a First Amendment retaliation claim. *See McKinney v. Rutenbar*, No. 2:14-cv-220, 2016 WL 4144253 at *2 (W.D. Mich. Aug. 4, 2016) ("it is not clearly established that a threat to file a grievance is protected conduct" for purposes of a prisoner's First Amendment retaliation claim) (listing cases). *See also Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) ("it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance") (emphasis in original); *Pasley v. Conerly*, 345 Fed. Appx. 981, 984 (6th Cir. 2009) ("[t]his circuit appears not to have determined conclusively whether merely threatening to file a grievance constitutes protected activity").

However, even if the Court recognized plaintiff's theory that his October 9, 2014 threat to file a grievance was "protected conduct" sufficient to support his retaliation claim, plaintiff failed to exhaust this claim. First, there was no causal connection between the threat and the adverse action. Plaintiff was terminated from his work assignment on October 6, 2014, three days before he threatened to file a grievance against defendant Palmer. Second, Grievance no. 2302 did not exhaust a claim that defendant Palmer terminated plaintiff's work assignment in retaliation for plaintiff's threat to file a grievance against Palmer. *See* Grievance No. 2302 at PageID.126. As discussed, grievance no. 2302 involved a claim that plaintiff was terminated from his prison work assignment

10

without proper supporting documentation. Third, plaintiff contends that defendant Palmer prevented exhaustion of his retaliation claim. *See* Plaintiff's Response at PageID.188-190. Plaintiff's main complaint seems to be that defendant Palmer violated an operating procedure by interviewing plaintiff, i.e., "AFTER DEFENDANT VIOLATED THE GRIEVANCE POLICY BY INVESTIGATING HIMSELF AND ACTING AS THE RESPONDENT, HE CLEARLY STATED AND LEFT NO DOUBT THAT HIS MOTIVE WAS RETALIATION". *Id*. at PageID.189 (internal citations omitted). As discussed, the Step II response found that policy and procedure was followed in this case. Furthermore, this contention is moot because grievance no. 2302 did not involve a retaliation claim.

Based on this record, plaintiff has not properly exhausted his First Amendment retaliation claim against defendant Palmer. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendant Palmer's motion for summary judgment should be granted on this basis.[3]

### III. Recommendation

For these reasons, I respectfully recommend that defendant Palmer's motion for summary judgment (docket no. 17) be **GRANTED** and that this action be **TERMINATED**.

Dated:  February 22, 2017              /s/ Ray Kent
                                       RAY KENT
                                       United States Magistrate Judge

---

[3] Because plaintiff failed to exhaust his retaliation claim, it is unnecessary for the Court to address defendants' other grounds for relief.

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).